# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

AARON JOHNSON,

        Plaintiff,

vs.

        Case No.
        Honorable
        Magistrate Judge

FARMINGTON PUBLIC SCHOOLS and
ROBERT HERRERA, in his individual and
official capacities,

        Defendant.

_____/

Leonard Mungo (P43562)
Mungo & Mungo at Law, PLLC
Attorneys for Plaintiff
31700 Telegraph Rd., Ste 250
Bingham Farms, MI 48025
(248)792-7557 (phone)
(248)792-7303 (fax)
Caseaction@Mungoatlaw.com

_____/

## COMPLAINT AND JURY DEMAND

      NOW COMES Plaintiff AARON JOHNSON by and through his attorneys,

Mungo & Mungo at Law, PLLC., and for his Complaint against the above-named

Defendants, states as follows:

## NATURE OF THE ACTION

      This is a Civil Rights action in which Plaintiff, AARON JOHNSON

(A.J.) seeks relief from Defendants for violation, under color of state law, of his rights, privileges, and immunities secured by the Civil Rights Act of 1871, 42 U.S.C. § 1983, the Fourteenth Amendment to the United States Constitution, the Constitution and laws of the State of Michigan, claims of constructive discharge, racially hostile work environment, and retaliation in contravention of the Elliot- Larsen Civil Rights Act, MCL 37.2101, et seq., based on race.

## JURISDICTIONAL ALLEGATIONS

1. All of the Defendant's unlawful practices occurred within Oakland County, Michigan.

2. Defendant Farmington Public Schools is a public entity that operates schools in Oakland County, Michigan, which is within the Federal Eastern District of Michigan.

3. Defendant Robert Herrera, upon information and belief, at all times material to this action was a resident of Oakland County.

4. Defendants Farmington Public Schools are persons within the meaning of The Elliot Larsen Civil Rights Act MCL 37.2101, et seq.

5. This Court has jurisdiction over these claims pursuant to the following statutes:

   a. 28 U.S.C. § 1343(a)(4), which gives the Court original jurisdiction

over actions to "recover damages or to secure equitable or other relief under any Act of Congress providing for the protection of Civil Rights including the right to vote.

b. 28 U.S.C. § 1331, which gives the Court original jurisdiction over actions arising out of the Constitution, laws, or treaties of the United States;

c. 28 U.S.C. §1367, which allows the Court to exercise supplemental jurisdiction over the state law claims.

## **VENUE**

6. Venue is appropriate in this judicial district under 28 U.S.C. § 1391(b) because the events giving rise to this complaint occurred in this district.

## **PARTIES**

7. Plaintiff AARON JOHNSON is a citizen of the United States and at all times material to this action was an Assistant Superintendent at Farmington Public Schools and a resident of Oakland County Michigan, within the Eastern district of Michigan.

8. Plaintiff AARON JOHNSON is African American.

9. Defendant Farmington Public Schools (hereinafter "FPS") is a public school district, so authorized under the laws of the State of Michigan, that operates Farmington Public Schools, as a part of its responsibilities

and services. At all relevant times herein, Defendant FPS acted under color of regulation, usage, custom, and law, and pursuant to its policies and practices.

10. Defendant Robert Herrera (hereinafter "Herrera") was, at all times material to this action, The Superintendent of FPS. Defendant Herrera is sued in both his individual and official capacities. After all relevant times herein, Defendant Herrera acted Deliberately and intentionally to violate AARON JOHNSON's Constitutional, Federal and State Statutorily protected rights to be free from race discrimination. Same was done under color of regulation, usage, custom, and law, and pursuant to the policies and practices of Defendant FPS.

11. Defendant Farmington Public Schools participated and/or acquiesced in the following constitutional violations including, but not limited to, these forms of participation:

a. Authorization and/or ratification to violate Plaintiff's constitutional rights;

b. Ex post facto ratification thereof;

c. As the supervisory authority over Farmington Public Schools created, promulgated and maintained customs, policies and practices that were likely to lead to and/or were a moving force in the constructive

discharge and humiliation of Plaintiff; and

d. Failure to train, supervise and discipline the FPS Superintendent, board members, and employee's refusal to enforce the laws prohibiting discrimination against African Americans.

**FACTS COMMON TO ALL COUNTS**

12. Since Plaintiff first began his employment as a Principal within the Farmington Public Schools District in 2008, he had been subjected to unlawful discrimination based on his race and a racially hostile environment.

13. As principal of FPS Harrison High School, Plaintiff noticed patterns of unfair treatment against African American students, staff and teachers including Plaintiff.

14. For the reasons stated in paragraph 14 above, Plaintiff left FPS to work in another school district between the years 2012-2014. Plaintiff returned to FPS in 2014.

15. The unlawful discriminatory treatment of African American students, staff and teachers, including Plaintiff,  was a driving force behind Plaintiff deciding to take a job outside of the district between the years 2012-2014.

16. Upon Plaintiff's return to FPS in 2014, the unlawful discriminatory and

racially hostile work and general environment at FPS continued to exist. FPS maintained, encouraged, fostered, cultivated, and tolerated an unlawful racially discriminatory environment that negatively affected African American teachers, staff, Plaintiff and students. Some of the unlawful racially discriminatory treatment that African American staff, teachers and Plaintiff experienced included but was not limited to African American staff and teachers being treated less favorably than their similarly situated white coworkers regarding discipline (African American staff and teachers received harsher discipline for the same or similar conduct that was engaged in by similarly situated white staff and teachers). African American staff and teachers were unlawfully discriminated against by FPS with regard to other terms, conditions, and privileges of employment because of their race. On numerous occasions Plaintiff had meetings, discussions, and conversations with FPS's Superintendent and various board members, individually and as a group, protesting and complaining about the above-described FPS's unlawful racially discriminatory customs and practices affecting African American staff and teachers, including Plaintiff. Plaintiff's protests were ignored. FPS's Superintendent, Herrera, and board members began to retaliate against Plaintiff for said protests and generally subject Plaintiff

to a retaliatory and racially hostile environment.

17. FPS's custom, policy, and practice of cultivating, maintaining, and tolerating an unlawful racially discriminatory and hostile environment resulted in numerous incidences of African American students being subjected to ongoing racial harassment, segregation, and unlawful classifications inferior to that of their similarly situated white students. On numerous occasions and in various ways, Plaintiff opposed these practices by FPS and made recommendations to eliminate said unlawful racially discriminatory and hostile environment based on race. Plaintiff was ignored by FPS Superintendent, Herrera, and board but instead was retaliated against by Herrera, FPS and its board, and separately based on Plaintiff's race, by creating difficult and unnecessarily strenuous and intolerable work conditions for Plaintiff. Plaintiff reported directly to FPS's Superintendent, Defendant, Robert Herrera. Defendant Herrera on numerous occasions marginalized, belittled Plaintiff through various microaggressions and interfered with Plaintiff work making it difficult if not impossible for Plaintiff to successfully complete his work responsibilities. Herrera engaged in said pattern of unlawful discriminatory conduct because of Plaintiff's race.

18. As a result of Plaintiff's protests against FPS's unlawful racially

discriminatory customs, policies, and practices, Defendant Herrera unnecessarily intensified Plaintiff's workload and otherwise strategically made Plaintiff's employment at FPS intolerable. Herrera's intentionally interfered with Plaintiff's work for reasons of Plaintiff's race. In addition, Herrera intentionally interfered with Plaintiff's work and harassed Plaintiff when Plaintiff engaged in efforts to abate the unlawful discriminatory and Racially hostile environment that prevails at FPS.

19. On one occasion a white student athlete on the men's baseball team sent a text to the baseball team group chat stating, "**I will get all of the black girls in school now since I'm wearing watermelon boxers**".

20. An African American student and member on that same FPS men's baseball team, who was also a part of the team group chat, posted the above-described racist text message thread on social media, out of disgust, in an attempt to expose the unlawful racially discriminatory practices which are regularly tolerated by Defendant FPS. As a result, the African American student was kicked off of the team. The white student who initially typed and published the racially offensive comment was suspended for a day but was not kicked off the team as was the African American student. Plaintiff was intentionally prevented by Herrera from reversing the unlawful racially discriminatory treatment of the above-

described African American student that was kicked off the FPS's men's baseball team.

21. On or about 2019 a white teacher, Ellen Ely, openly called a black student "Nigger" in front of an entire class. Plaintiff, acting as Assistant Superintendent, attempted to initiate discipline against Ely, but was immediately threatened for attempting to do so by Defendant Herrera and FPS board members. On numerous occasions and in various ways, Plaintiff opposed these practices by FPS and made recommendations to eliminate said unlawful racially discriminatory and hostile environment based on race. Plaintiff was ignored by Herrera, FPS, and its board and instead was retaliated against by creating difficult and unnecessarily strenuous and intolerable work conditions for Plaintiff. Plaintiff reported directly to FPS's Superintendent, Defendant, Robert Herrera. ("Herrera")

22. After realizing that FPS's suspension and expulsion customs, policies and practices had and continues to have a disparate impact on African American students compared to that of similarly situated white students, Plaintiff attempted to initiate a plan of action which would lower said suspension and expulsion rate of African American students, however, Plaintiff's plan was rejected, and Plaintiff was instead harassed by The Defendants Herrera and FPS and its Board Members. Plaintiff opposed

these practices by FPS and made recommendations to eliminate said unlawful racially discriminatory and hostile environment based on race. Plaintiff was ignored by Defendants Herrera, FPS and its board members. Herrera, FPS and its board instead retaliated against Plaintiff by creating difficult and unnecessarily strenuous and intolerable work conditions for Plaintiff.

23.   In addition to the discriminatory treatment of African American students in regard to disciplinary actions, African American student gpa's and standardized test scores are all significantly lower than the scores of similarly situated white students. FPS's African American students' race is the basis for the above described unlawful racially discriminatory school environment resulting affects.

24.   African American students in the district are not provided with the resources or accommodations that would put African American students in a position to score higher gpa's and standardized test scores. FPS's unlawful racially discriminatory customs policies and practices is the moving force responsible for the above-described results.

25.   Plaintiff has notified Defendant of these deficiencies on numerous occasions and has received no support or direction as to any corrective action.

26. In an attempt to eliminate racial biases (Among employees and students) and provide African American students within the district the academic assistance needed and enjoyed by their similarly situated White students Plaintiff created the "Anti-racism Institute" and attempted to hold regular meetings throughout the school year.

27. All teachers, students, and administrators of all races were invited to these "Anti-racism Institute" meetings which the primary purpose of same was to "rid the school district of racism, in every aspect."

28. Once the Anti-Racism Institute was created, FPS White staff began engaging in retaliatory conduct, including but not limited to staff air dropping monkey pictures to Plaintiff's phone/MacBook, demeaning/ unprofessional tone from staff, usurping of Plaintiff's responsibilities and authorities, white staff not speaking to Plaintiff (Isolation), and a Union President being assigned to Plaintiff's classroom as a "supervisor" to monitor Plaintiff. Upon information and belief his was specifically orchestrated by Defendant Herrera with the knowledge and approval of FPS and its board.

29. In a recorded conversation, Herrera told Plaintiff that Herrera communicated to Board members that board members should stop having conversations with Plaintiff regarding Plaintiff complaining about

not receiving support for addressing race and other related issues as doing so constitutes a "hostile work environment".

30. Plaintiff notified FPS Administrators of the retaliatory conduct on several different occasions, including the monkey picture airdrops, and nothing was done about it by FPS.

31. The above describes the typical day to day racially discriminatory environment that Plaintiff was subjected to during his employment with the FPS.

32. Throughout his tenure with FPS, Plaintiff repeatedly brought this racially discriminatory and hostile environment to the attention of FPS Administrators.

33. Notwithstanding their knowledge of the racially discriminatory and hostile environment that Plaintiff was subjected to, Defendants did not take any action to address Plaintiff's complaints.

34. Defendants only initiative was to ask Plaintiff if Plaintiff wanted to initiate an investigation of the Monkey picture incident months after Plaintiff had complained about it and the incident had occurred.

35. Defendants were clearly aware that Plaintiff was subjected to an unlawful racially discriminatory work environment that violated Plaintiff's Civil Rights, yet Defendants failed/refused to make any corrections. The above

described unlawful discriminatory conduct by Defendants grew out of Defendants maintenance of unlawful racially discriminatory customs, policies and practices, Plaintiff's race and retaliation against Plaintiff for engaging in protected activity.

## COUNT I
## Violation of 42 U.S.C. §1983 – *Monell* Liability – Farmington Public Schools

36. Plaintiff re-alleges and incorporates Paragraphs 1-35 above;

37. At all times herein, the **Farmington Public Schools** maintained a series of policies, customs, and practices which individually and collectively constituted     a moving force in the Constitutional violations asserted herein, including but not limited to:

  a. Direct humiliation, outrageous, racist, and demeaning antagonism and animus toward African Americans and in particular, African American students and staff;

  b. Failure to train its staff as to the mandatory requirement that racist and discriminatory actions are inexcusable and will be responded to with outright discharge;

  c. Failure to train its staff with regard to the use of hostile statements and verbalisms directed against African Americans;

  d. Failure  to  address  known  complaints  of  actions  and  racially

13

demeaning and antagonistic remarks by its white staff and students directed at African Americans;

e. Failure, amounting to a refusal, to discipline its staff for engaging in humiliating, outrageous, racist, and demeaning actions directed at African Americans;

f. The refusing to provide support to Plaintiff as a way to retaliate against Plaintiff for creating the "Anti-Racism Institute."

38. These customs, policies, and practices of the **Farmington Public Schools** wasa moving force in the constitutional violations inflicted by the individual **Defendant Herrera** upon the **Plaintiff**, as set forth herein, above;

39. As a direct and proximate result of the unconstitutional acts of the **Defendant** as alleged herein, **Plaintiff** has sustained a violation of his right to equal protection of the law and as a result, is entitled to damages that include, but are not limited to:

a. Damages for serious emotional injury;

b. Damages for substantial economic loss and damage, including but not limited to lost wages and lost income;

c. Damages for embarrassment, humiliation, outrage, mental anguish, fear and mortification, and stress.

    d.  Punitive damages in the amount of $15,000,000.00; and

    e.  Attorney fees and costs, pursuant to 42 U.S.C. § 1988.

## COUNT II
## Violation of 42 U.S.C. §1985 – Conspiracy Invidious Racial Animus

40.    **Plaintiff** re-alleges and incorporates Paragraphs 1-39 above;

41.    At all times, herein, Defendant agreed and conspired to violate the Plaintiff's rights secured by the Thirteenth and Fourteenth Amendments to the United States Constitution;

42.    This agreement and conspiracy, and the actions undertaken pursuant to this agreement and conspiracy, were so done based upon an invidious racial animus directed at the **Plaintiff**;

43.    As such the Defendants violated Plaintiff's rights that are guaranteed and made actionable under 42 U.S.C. §1985;

44.    As a direct and proximate result of the unconstitutional acts of the Defendant as alleged herein, Plaintiff has sustained a violation of his right to equal protection of the law and, as a result, is entitled to damages that include, but are not limited to:

    a.  Damages for serious emotional injury.;

    b.  Damages for substantial economic loss and damage, including but not limited to lost wages and lost income

c.  Damages for embarrassment, humiliation, outrage, mental anguish, fear and mortification, and stress.

d.  Punitive damages in the amount of $15,000,000.00; and

e.  Attorney fees and costs, pursuant to 42 U.S.C. § 1988.

## COUNT  III
## Violation of 42 U.S.C. §1981 – The Right To Make And Enforce Contracts

45.  **Plaintiff** re-alleges and incorporates Paragraphs 1-44 above;

46.  At all times herein the **Plaintiff** had entered into a contract of employment with the **Defendant, Farmington Public Schools**.

47.  **Defendant** undertook, instead, to turn that contract into an employment situation wherein the **Plaintiff** was subjected to a racially hostile and toxic work environment that inflicted upon him humiliation, racism, and physical endangerment–as set forth above herein–whereby his right to make and enforce his contract with the **Farmington Public Schools** was afflicted, diminished, and undermined thereby creating a situation where **Plaintiff's** rights were far less than and not the same as those enjoyed by white persons, in violation of 42 U.S.C. §1981;

48.  As a direct and proximate result of the unconstitutional acts of the **Defendant as** alleged herein, **Plaintiff** has sustained a violation of his right to make and enforce contracts and, as a result, is entitled to

damages that include, but are not limited to:

a.  Damages for serious emotional injury;

b.  Damages for substantial economic loss and damage, including but not limited to lost wages and lost income;

c.  Damages for embarrassment, humiliation, outrage, mental anguish, fear and mortification, and stress;

d.  Punitive damages in the amount of $15,000,000.00; and

e.  Attorney fees and costs, pursuant to 42 U.S.C. § 1988.

## COUNT IV
## Violation of 42 U.S.C. § 1983 Fourteenth Amendment Equal Protection Clause

49.  Plaintiff realleges and reincorporates paragraphs 1-48 above.

50.  At all times alleged herein, the individually named and identified Defendant herein, Robert Herrera, was a person acting under color of law and otherwise intentionally discriminated against the Plaintiff based on his race in all manner of ways as set forth herein all in violation of 42 U.S.C. §1983.

51.  The Equal Protection clause of the Fourteenth Amendment to the United States Constitution requires that when a state establishes a public school system (as in in Michigan), no teacher or any person employed by the said school may be denied access to equal treatment regarding their

employment on the basis of their race nor discriminated against in any way based on race.

52. Defendant, FPS, intentionally deprived Plaintiff of access to equal treatment regarding his employment based on his race, by creating a racially hostile work environment, because of Plaintiff's race, to wit, African American.

53. Plaintiff's constitutional rights were clearly established at the time of the misconduct because a reasonable person and or school district would understand that such treatment would cause a deprivation of Plaintiff's rights.

54. At all times herein, the individually named and identified Defendant, Robert Herrera, intentionally discriminated against Plaintiff based on his race in all manners of ways set forth herein in violation of 42 U.S.C. § 1983.

55. Defendant FPS intentionally discriminated against Plaintiff by subjecting him to a racially hostile work environment as set out in the facts above, because of Plaintiff's race.

56. Defendant's deliberate conduct was the moving force behind Plaintiff's deprivation of his constitutional right to work an environment free of racial hostility and discrimination that Caucasian employees are

provided.

57.    As a direct and proximate result of the unconstitutional acts of the **Defendant as** alleged herein, **Plaintiff** has sustained a violation of his right to equal protection of the law and, as a result, is entitled to damages that include, but are not limited to:

a.  Damages for serious emotional injury;

b.  Damages for substantial economic loss and damage, including but not limited to lost wages and lost income;

c.  Damages for embarrassment, humiliation, outrage, mental anguish, fear and mortification, and stress;

d.  Punitive damages in the amount of $15,000,000.00; and

e.  Attorney fees and costs, pursuant to 42 U.S.C. § 1988

## COUNT V
## VIOLATION OF THE ELLIOTT-LARSEN CIVIL RIGHTS ACT
## RACE DISCRIMINATION

58.    Plaintiffs incorporate by reference paragraphs 1-57.

59.    At all material times, Plaintiff was an employee and **Defendant FPS** was his employer, covered by and within meaning of the Michigan Elliott-Larsen Civil rights Act, MCL 37. 2101 et seq.

60.     Plaintiff Aaron Johnson's race (African American) was at least one factor that made a difference in Defendants' decision not to deny him the terms, conditions and privileges employment he was entitled to under law.

61.     Had Plaintiff been Caucasian, he would have been afforded access to said terms, conditions and privileges of employment.

62.     Defendants, through its agents, representatives, and employees were predisposed to discriminate on the basis of race and acted in accordance with that predisposition.

63.     Defendants, through its agents, representatives, and employees treated Plaintiff differently from similarly situated White employees in the terms and conditions, privileges of employment, based on unlawful consideration of race.

64.     Defendants' actions were an intentional disregard for Plaintiff's rights and sensibilities.

65.     As a direct and proximate result of Defendants' unlawful actions, Plaintiff has sustained injuries and damages including but not limited to, loss of earnings and earning capacity; loss of career opportunities; humiliation and embarrassment; mental and emotional distress; and loss of the ordinary pleasures of everyday life, including the right to pursue

gainful employment of choice.

**WHEREFORE** Plaintiff requests that this Court enter judgment against

Defendants as follows:

a. Compensatory damages in whatever amount above $25,000 they are found to be entitled to.

b. Exemplary damages in whatever amount above $25,000 they are found to be entitled to.

c. An award of lost wages and the value of fringe benefits, past and future.

d. An award of interest, costs, and reasonable attorney fees.

e. Damages for emotional and mental distress, humiliation, embarrassment, and injury to professional reputation in the amount of $15,000,000.00.

## <u>COUNT VI</u>
## <u>VIOLATION OF THE ELLIOTT-LARSEN CIVIL RIGHTS ACT</u>
## <u>RETALIATION</u>

66. **Plaintiff** herein re-alleges and incorporates Paragraphs 1-65 above:

67. Plaintiff' repeatedly complained to Defendants about Defendants unlawful racially discriminatory conduct toward African American teachers, staff, students and Plaintiff. Defendants' unlawful discriminatory conduct was a violation of ELCRA, MCL 37.2101, *et seq*.,. As such Plaintiff's complaint against Defendants, as described above constituted protected activity under ELCRA.

68. Defendant retaliated against Plaintiff, as described herein above, for

taking action to protect the African American staff, teachers, students and himself from the unlawful racially discriminatory conduct and the racially hostile environment created by Defendants.

69.   Defendants' actions were intentional, with reckless indifference to Plaintiff's rights and sensibilities.

70.   As a result of Defendants' retaliation and unlawful discrimination, Plaintiff was constructively discharged from his job on or about June 2019, when he was no longer able to work due to the intolerable conditions created by Defendants.

71.   As a direct and proximate result of Defendants' unlawful actions, Plaintiff has sustained a loss of earnings, benefits, suffered mental anguish, physical and emotional distress, humiliation, embarrassment, and loss of professional reputation. As a result, Plaintiff is entitled to damages.

WHEREFORE, **Plaintiff** request that this Court enter judgment against **Defendants**, providing the following relief:

a.   Back-pay, with prejudgment interest;

b.   Damages for embarrassment, humiliation, outrage, mental anguish, fear and mortification

c.   Front-pay;

    d.    Compensatory damages in whatever amount that Plaintiff is found tobe entitled;

    e.    An award of reasonable attorney's fees, expenses, and costs;

    f.    Such other and further relief that the Court deems appropriate.

Respectfully submitted,


/s/ Leonard Mungo
Mungo & Mungo at Law, PLLC
Attorneys for Plaintiff
31700 Telegraph Rd., Ste 250
Bingham Farms, MI 48025
(248)792-7557 (phone)
(248)792-7303 (fax)
Caseaction@Mungoatlaw.com

Dated: October 29, 2021

## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

AARON JOHNSON,

       Plaintiff,

vs.

       Case No.
       Honorable
       Magistrate Judge

FARMINGTON PUBLIC SCHOOLS and
ROBERT HERRERA, in his individual and
official capacities,

       Defendant.

_____/

Leonard Mungo (P43562)
Mungo & Mungo at Law, PLLC
Attorneys for Plaintiff
31700 Telegraph Rd., Ste 250
Bingham Farms, MI 48025
(248)792-7557 (phone)
(248)792-7303 (fax)
Caseaction@Mungoatlaw.com

_____/

## <u>JURY DEMAND</u>

      NOW COMES Plaintiff, Aaron Johnson, by and through his attorneys, and hereby demands

a trial by jury of the issues in the above-captioned cause of action.

         Respectfully submitted,

              /s/ Leonard Mungo
              Mungo & Mungo at Law, PLLC
              Attorneys for Plaintiff
              31700 Telegraph Rd., Ste 250
              Bingham Farms, MI 48025
              (248)792-7557 (phone)
              (248)792-7303 (fax)
              Caseaction@Mungoatlaw.com

Dated: October 29, 2021